080710 people of the state of Illinois accolade by Robert M. Hanson v. DeMarco Spencer, accounted by Lawrence J. O'Neill. Mr. O'Neill. May it please the Court, Counselor. My name is Lawrence O'Neill and I represent DeMarco Spencer in this cause. Mr. Spencer was convicted as an accomplice of felony murder related to the shooting death of David McCreary. The underlying felony of the felony murder count was attempt armed robbing. Thus, to sustain the felony murder conviction, the state must prove that Spencer or his co-defendants committed the offense of attempt armed robbing. In argument one, Spencer addressed the attempt armed robbery conviction and claims that the state failed to prove that Spencer or his co-defendants committed attempted armed robbery beyond a reasonable doubt. Further, because the state then failed to prove the underlying felony of attempt armed robbery, the felony murder conviction must also be vacated. The state failed to prove that an attempted armed robbery had occurred. First, the evidence did not establish that Spencer or the co-defendants intended to commit the crime. And secondly, that they made a substantial step towards the commission of the armed robbery. As to intent to commit an armed robbery, there was no evidence of intent or plan to rob David McCreary. There were four co-defendants involved in the encounter with McCreary. DeMarco Spencer, Katishu Warfield, Jackie Williams, and Gabriel Shelton. Only Spencer and Warfield testified at Spencer's trial. And both of these witnesses testified that the co-defendants went to McCreary's house related to a drug transaction. There was no mention of robbing McCreary. The evidence was indisputable that McCreary sold marijuana regularly to all four co-defendants. Warfield testified that two days before McCreary's death, she called McCreary and set up a deal where McCreary agreed to sell her three pounds of marijuana for $2,000. The day of McCreary's death, Warfield called McCreary at 1 p.m. and arranged for her and Williams to go to his house at 6 o'clock to consummate the drug transaction. Warfield testified that there were no discussions with Williams or the other co-defendants about robbing McCreary. Further, Warfield testified that in the car on the way to McCreary's house to buy the marijuana, none of the co-defendants mentioned an armed robbery. Or a plan to commit an armed robbery at McCreary's house. In addition, Warfield testified that in the car on the way to McCreary's house, Warfield telephoned McCreary and told him that they were on the way and they would be there shortly. Thus, Warfield's testimony was undisputable that the transaction that the co-defendants were going to consummate at McCreary's house was simply related to a marijuana transaction. Spencer testified with greater detail about the drug deal and the drug-related history between McCreary and the co-defendants. Spencer testified that he was brought into the matter because one of the other co-defendants, Gabriel Shelton and Williams, had been shorted in a marijuana transaction shortly before this deadly encounter. And because Spencer was friends with Shelton and McCreary, Spencer agreed to accompany the co-defendants to McCreary's house to try to facilitate either having McCreary compensate for the previous shortage of marijuana or a money equivalent. The two co-defendants who testified in trial both testified that there was no mention of an armed robbery, there was no plan for an armed robbery, and so consequently there was no evidence of any plan or intent to commit the armed robbery. Secondly, the attempt conviction cannot stand because there was no evidence that the co-defendants made a substantial step towards the commission of this armed robbery conviction. This was essentially a fight, a physical assault that broke out when Williams entered the house, McCreary answered the door, a fight ensued, a physical assault, and a shooting occurred. There was no attempt to take money from McCreary, no evidence that they reached into his wallet, even though McCreary, the deceased, had over $600 cash in his pocket. And the co-defendants had an opportunity to take money, but they didn't. There was no evidence of any attempt to take money, and there was also no credible evidence that the co-defendants demanded money or brandished a gun at McCreary in making a demand for money. The only evidence that arguably indicates that there was a demand, and remember, in order to establish an attempt armed robbery, the state had to prove that there was either a demand, either a taking of the property, or a demand for the property. And there was no evidence of either. However, one of the persons in the house at McCreary's house was named Frankie Ratliff, and he testified that he heard one of the co-defendants, I claim it was Jackie Williams, say to McCreary, the deceased, break yourself before the shot occurred. Now, Ratliff then testified that this break yourself is a slang term for, this is a sticker. That is the only evidence that arguably could be construed to be a demand in order to establish an attempt armed robbery. And I submit to your honors that that is woefully insufficient for the state to sustain its burden of proof on a slang phrase with such ambiguity surrounding its meaning. Go ahead. It was nothing ambiguous about two men standing in the doorway, your client with his shirt under his nose and his friend with a bandana over his face, one holding a gun. There's nothing ambiguous about that. According to Warfield's testimony, your client pushed McCreary or somebody down to the ground as they entered. All right, so are you suggesting that words are necessary to communicate a request or a demand for either drugs or money? Yes, I am, your honor. Yes, I am. It's certainly something that would be, and I cited cases where there has to be an affirmative demand, you know, an inconclusive- And standing there with a gun and a bandana over your face isn't- Maybe it was, we want our marijuana. You shorted us last time, we want our marijuana this time. Don't ever short us again. Maybe it was to be, we're going to kill you. Sometimes actions speak louder than words. But there has to be some proof of a non-robbery attempt occurred, your honor, and I am arguing that it was only the break yourself. Otherwise, why did they need a disguise? McCreary, the deceased, knew them. I mean, there was something criminal was going to occur, and I'm submitting that it was a drug transaction. Isn't that the fact finder's role to determine what they flesh out from the evidence? Well, ultimately it is, your honor. I mean, well, it is, but ultimately this court has to view the evidence and determine whether the statement is verdict proof, you know, under Ingrid Winship. Certainly, you know, this court is, you know, obliged to consider whether the statement met that burden, but it is a jury question. I mean, obviously, that's true, your honor. Yes, sir. But there's nothing, these cases that I cite, you know, there has to be a demand, a demand of brandishing a gun, obviously, or a brandishing a gun on a taxi cab driver, you know, in a dark street Chicago. Brandishing a gun in a drug dealer's house isn't supposed to be perceived by the drug dealer that maybe they want his money or drugs? Well, in the context of this case, your honor, it is that, you know, and Kit Warfield testified that, you know, that they have dealt with drugs with McCurry for a long period of time. Ever with a bandana or a disguise? What's that? I don't understand. That's true, but I don't see how that establishes an armed robbery. Everybody in that, well, the people in the house knew these co-defendants. I understand your point. Well, so, I mean, but I'm saying quite clearly that there's no, the evidence is not established that the gun was brandished. The evidence, you know, and this is an important point, indicates to my reading of the record, and I'm submitting here, that there was a fight. That Williams enters the door, there's a fight, Williams is diminutive, he's a smaller guy, McCurry's a big guy, and the gun goes up. There was never, like, my understanding of the record, I don't mean to misrepresent the record, but my understanding of the record is Williams is in the door, push comes to shove, they are tussling, that's the word that was used, and a gun is fired. Not, give me your marijuana, give me your money, you know, that kind of thing. So the brandishing of the gun, in this context, was not sufficient to communicate a demand for a robbery. And that's why, and we have to go back and look at this breaker cell, because I'm submitting that this armed robbery conviction, stands or falls on the breaker cell being the communication that distinguishes this from just a drug deal, or, you know, roughing up a guy, a drug dealer who shorted them, to mean it's an armed robbery. There has to be some evidence of an armed robbery. And these guys were going over there for some crime, you know, it probably was drugs, it could have been roughing them up, whatever. Physical assault, I don't know. The breaker cell is the only evidence that indicates that there could have been an attempted armed robbery. So this court, I submit, will have to affirm, if I need to state proof of this burden beyond a reasonable doubt, by Frankie Rantliff's testimony. Rantliff had just testified that he smoked marijuana ten minutes before these events occurred. He heard somebody, Williams, I'm submitting, say that breaker cell. Now that, then the prosecutor was allowed to ask Rantliff what breaker cell means in slang. And Rantliff testified that that means that this is a sticker. Now, again, that has to be, beyond a reasonable doubt, that that term is a demand for money or property. And it doesn't show that here. There was no evidence that the speaker, Williams, was communicating this term, breaker cell, if that is, you know, accepted. To me, this is a sticker. There's no evidence that the deceased interpreted the breaker cell to be a demand for money. It is just Frankie Rantliff. And there's problems with Rantliff besides him being a, you know, smoking dope right before these events occurred. But Rantliff, you know, that's the problem with affirming a conviction based upon the slang. We don't know what the speaker meant. We don't know. We just simply do not know. And that, the problem with that also is an argument, too. You don't want to jump ahead, but an argument, too, I argue, that that was inadmissible hearsay. Williams, the person who allegedly said breaker cell, did not testify. Was that statement offered for the truth of the matter asserted? It certainly was. It was the most important, fundamental, most primary evidence that the state had to prove that this was an attempted armed robbery. It was prosecuted. It was a verbal act. It wasn't offered for the truth of what's asserted. That statement was made. That was part of the occurrence. It was a verbal act. Well, I still think it's a confrontation clause problem, Your Honor, because the defendant was not, Spencer was not allowed to cross-examine the speaker. He did not appear in court. And I believe that it was, well, my position, Your Honor, is that it was offered to prove the truth that the state claims that it was an attempted armed robbery. It was an out-of-court statement. The witness did not testify. I think there was a confrontation clause problem with that, Your Honor. And the state relied upon that statement in its closing argument, as set out in my brief, to establish the attempted armed robbery. I understand that it was a witness's testimony about what occurred, what he heard during the occurrence. But my position, Your Honor, is that it was an out-of-court statement, a hearsay statement, that the defendant did not have an opportunity to cross-examine. And it was particularly prejudicial and harmful here because it involved an ambiguous slang term, where Spencer did not have the opportunity to testify, to declare it, to say, what did you mean by break yourself? So the state then interpreted that ambiguity in its favor and said that that meant that there was an attempted armed robbery underway. Counsel, you have two minutes. Well, the state didn't testify. A witness testified what it meant. No, that's true. It's correct, Your Honor. The state then used that in its closing argument to establish the only bit of evidence it had that this was an attempted armed robbery underway, rather than a drug deal. Why were they covering their faces again, under your theory? Well, my theory is that there was some kind of criminal action that went on there. Perhaps the evidence most strongly suggests that it was going to be a drug deal. Warfield testified that it was a drug deal. Spencer testified that it was a drug deal. It was undisputed that the deceased, McCreary, sold drugs. You know, McCreary, it was testimony, I think, from Warfield. So they wear a mask to cover their faces when they're doing a drug deal? That's your theory? It's equally logical and persuasive that they were covering it for an armed robbery. Why would they need to cover their face for an armed robbery with a person who knows them? And they called in a car on the way to say we're on our way. We're coming over, you know, and then you have a bandana. That doesn't make sense either way. But it doesn't, Your Honor, my position is, show anything that would prove anything or establish anything about an armed robbery. We're on our way to your house to buy our marijuana. Then they cover up their faces when they walk in. I don't know. I mean, it could have been. I don't think it shows. I don't think it establishes in any way an armed robbery as opposed to, you know, a drug deal. The evidence suggests that that's what was going to occur there. Was there marijuana recovered in the home? I don't believe, Your Honor. We know Ratcliffe smoked just before. He testified that he did. Ratcliffe testified that he was smoking during the day just about ten minutes before in McCreary's house. But no marijuana was recovered in spite of the fact that there was a phone call for coming over to get that $2,000 worth of marijuana. Well, I don't know if they knew that from Catechia Warfield right after the crime. I don't think the Warfield wasn't apprehended for a while. I don't know when they found it, when she relayed that information to the police, Your Honor. Okay. Thank you very much, Your Honor. Good afternoon, Your Honors. May it please the Court, Counsel. It is our contention here that the evidence of an attempted armed robbery was overwhelming or, at the very least, easily sufficient under Collins, considering the evidence and the like most favorable for prosecution. Please look at all the facts, as I know you will. If I could briefly, and I admit it's going to be rather redundant with my brief, talk to you about all the facts, which Counsel didn't quite emphasize as much as I will. Ratliff talked about men with bandanas on their face coming in the door, one of them shooting the victim. Two men with bandanas entered. He said another was on the porch. The victim struggled with them. One of them said, Break yourself. He said, That means a holdup. There were two to three shots. Mrs. Warfield and the co-defendant, Williams, certainly agreed to come there to buy marijuana for $2,000. After they left her house, but before going there first, the defendant, as you hear Mr. Spencer, left her house. He returned with co-defendant Shelton and then said they were going to get the marijuana. However, she didn't know that anybody had the $2,000 they were supposedly to have to buy $2,000 worth of marijuana. They picked up the defendant. I'm sorry, it was her companion, Williams. They picked up the defendant. He had the gun. That's the source for making this an attempt armed robbery. He gave the gun to Williams. He said he did so, I believe, the other person, Shelton's direction. Then they get to the victim's house. Williams has a large bandana on his face. The defendant pulled his shirt up over his nose, as you know, Judge Wright. Why they bothered masking themselves when ostensibly the victims knew they were coming, there could be witnesses outside, people that they would like not to have identify them. I presume that's a reason. The second reason is a simplistic one, admittedly, but one I think applies in many criminal cases. A lot of criminals aren't that bright, and they do dumb things. They might not have really been thinking that, hey, the bandanas aren't going to serve a wonderful purpose. Certainly they wouldn't serve much with regard to the victim. However, they would indeed serve a purpose. If they had a gun, gunshots could be fired, noise, witnesses come, bandanas keep those other witnesses. Witnesses are not part of the transaction from identifying them. The defendant even used his shirt over his hands to open the front door, apparently to keep fingerprints away. These people are looking to a criminal transaction that's going to redound to their detriment in the future, not merely a drug transaction where they hand him $2,000, he hands them the drugs. Criminal transaction, but drug dealers and drug buyers don't often turn in each other. Then the defendant here pushed both the victim and Warfield to the floor saying, move, bitch. That's the act of somebody going to this house just to buy drugs. If Warfield's in on just making a drug purchase with them, why'd she need to move? The point being they wanted to quickly get through that door and rob the guy. Indeed, much of counsel's argument here is a reasonable one. I'm not saying he's making an unreasonable argument, but it's an issue. It's an argument made to the trier of fact, not an argument properly before the appellate court, who's to look at the evidence under the Collins standard and not try the case de novo. The victim co-defendant tussled their two shots. Then Detective McDaniel also testified. He got a videotaped statement from the defendant, which I urge you to look at, and the jury did. Initially, the defendant said the crime was not a lick, in quotes, or robbery. However, he then said they went there to see the victim to get his money, the money that apparently Shelton and Williams had been previously shorted on that prior drug transaction gone bad. So he pushes the floor, says, move, bitch. There's the thing about break yourself. They went there to get money. The defendant told the detective there was a prior mix-up regarding the money and with the co-defendant buying dope from the victim. They were going to straighten that out. You bet they're going to straighten that out. The logical inference, the jury found, is they're going to straighten out by robbing him. I cite the Euseldin case. You can't use force to collect a debt, and indeed, great argument to make. It's an illegal debt. The defendant testified, and he didn't help himself, as I point out in my brief. He met with co-defendant Shelton. Shelton said the victim had shorted him and Williams regarding the drugs, and he needed a pistol. Voila, the defendant got the pistol, gave it to Williams, as Shelton said. First, he wipes his prints from the gun. He said he was merely going along to, his words, alleviate the situation. Apparently, I think he meant mediate, but his argument to make, his thing to say to the officer or to the jury, no rational person, I submit, would buy that. The most logical inference from all this evidence, they were going to rob the victim. They parked around the corner from the victim's house. They're going to convene him for a drug transaction as planned. Why not park right in front? Well, the defendant can say, but why argue around the corner? What's the point? To give them just a little bit more surprise. The defendant's expecting, the victim, under their theory, might be expecting them to show up for a drug transaction, but they're not showing up for drugs, so they want to come around the corner, and that, together with the way they burst in the door, say, break yourself, shove people to the floor, is all further evidence of guilt. The defendant attempted to explain that, saying the victim was paranoid and didn't like people parking in front of his house. His testimony to make, but absurd. The defendant also claimed he didn't know that co-defendant Williams had actually brought the gun with him. Williams tells him he needs the gun, the defendant gives it to him, and in this short period of time, from getting the gun to traveling there in the car, he didn't know the guy had the gun. Come on. And, of course, it was refuted by Detective McDonald, when he said to Detective McDonald he wasn't intending to take part in the robbery, but then he later said they went there to get the victim's money. Indeed, the defendant admitted he first told the police he had an alibi. He's a clear, untruthful person. The whole point is this was a ruse to get to the victim. The defendant was there as a mediator. His claim, not true. The presence of the gun is not everything in the case, but it certainly helps our proof. And, again, the Collins standard. The gun was just part of the transaction, and it made it more likely to be a transaction involving a robbery than a transaction of simply, I give you money, you give me drugs. I talk about my cases in my brief. I believe they're in point. The defense counsel says they're distinguishable, but he's wrong in the sense that saying that the co-defendant, or rather in saying that the co-defendant's confrontation with the victim were simply regarding a drug transaction. That's his argument to make, but as I've said, probably too redundantly, this was an attempt on a robbery on the facts. Granted, some of my cases did involve admissions, but here we had all these facts involving or pointing to a verdict of armed robbery. My point is I'm not saying my cases are absolutely the same as this. Look at the language in there. Look at all the evidence as discussed regarding proof of intent and, of course, the substantial step. I distinguish the defendant's cases at pages 9 and 10 of my brief. There were fewer factors in his cases there than here regarding intent to rob. His Wright case went off on no proof of corpus delicti. His Faulkner case involved a guy trying to get money back from a bartender who shorted him. Whether redressing a prior bad transaction or not, the means chosen in this case was we're getting money from the victim by utilizing this firearm and threatening him. We're going to attempt to rob him. If you would, Your Honors, if you want a brief synopsis of my argument, all the facts regarding intent to rob and substantial step, singular, are set forth and summarized at pages 10 and 11 of my brief. The defendant can argue in sum that they went there to get drugs or to settle an agreement from the prior proceeding, but the evidence is clear that for whatever reason they intended to rob this victim. And although the victim may have anticipated just a drug transaction, indeed, it came out to be much more than that. As to issue two, it is unclear whether it was the defendant or co-defendant who said the words break yourself. Ratliff said somebody said it, and he said there were two men in the house. He did not say it was the one in the house doing the tussling that said it. The objection was not made below its weight on appeal unless it's a point error. We argue in our brief it was not a point error. The statement was admissible. It's a statement of a co-conspirator. The statement was part of the act of the robbery itself. It's the type of thing robbers say. This is a stick-up. Break yourself. Hands up. In the old stagecoach days, I guess it was more like hands up or, you know, this is it, and I'll break. In your brief, you put this as a hearsay needing an exception. That's where you come up with the conspiracy. Right. It might not even be hearsay given the fact that it's, I don't know, and I think you even mentioned yours, like a verbal act. But it is needing an exception. It's certainly within the co-conspirator exception of the hearsay rule. It says you have to make a, first of all, there was no point error here. This argument, this issue was never raised below. Evidence wasn't closely balanced. Argument, the evidence on this one small matter, given all the facts, was not depriving the defendant of a fair trial. Crawford doesn't apply to co-conspirator statements, all of which is in my brief. The defendant didn't object to any of this below, so the prosecutor had no reason to cite the co-conspirator rule or that this was an act as part of it or anything else. There was no objection. The defendant admitted to Detective McDaniel that they went there to get the victim's money. And that, with all the other facts, easily met the co-conspirator prima facie evidence of conspiracy by a preponderance of the evidence, only a burden. Have I responded fully enough to your question? That concludes my comment, Your Honor. Didn't another witness testify, a police officer, that he wasn't familiar with the term break yourself? It had no meaning to him? I believe that's true. I'm not certain, but I believe it. So the jury was given that evidence? Oh, yeah. Oh, sure. Yeah. Do you agree with your opponent that a statement is necessary for an attempt armed robbery? Oh, no. No. You know, if I'm about to rob you in an armed robbery, I have a gun. If I'm about to rob you, I can say I'm robbing you. I can go like that, you know, assuming you'd be holding some money or something. I can point my gun at you and make this gesture I'm making with my hands, hand it over. He could say something considerably more vague like, gun, you know what we're here for. But, no, I do not agree that a statement is necessary. Thank you, Your Honor. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honors. I'd like to start with the conspiracy, the hearsay statement, and whether the conspiracy exception applies before I move on to the reasonable doubt argument. Again, this was a hearsay statement, testimonial, offered to prove that an armed robbery occurred. There was no cross-examination. And if there's a hearsay exception that the State submits applies because it's a co-conspirator exception to the hearsay rule, that was not argued below.  And secondly, in order to qualify to be a co-conspirator hearsay exception, there has to be evidence independent of the hearsay statement to establish a conspiracy. And I'm submitting that there's no evidence other than this, there's no evidence of a conspiracy to commit an armed robbery. And there's no evidence to commit an armed robbery. Bandanas, guns, parking down the street. Granted, that's criminal activity afoot. But nothing is specifically about an armed robbery. So the hearsay exception for co-conspirators does not apply here because there is no independent evidence to establish a conspiracy to commit armed robbery, independent of the break-yourself statement. In passing, counsel mentioned that Mr. Spencer, in his statement, said that he went there, they went there to get money. Well, that is true, but that is consistent with his testimony, and he's maintained throughout, that they went there with Shelton and Williams having been cheated by the deceased McCreary in a drug deal, so they went to get money. The point is that that statement that Spencer made, we went there to get money, does not indicate that he went there to rob a guy who they knew and had dealt with the drugs and called and told them they were on the way to pick up the drugs. But I'd like to get back to the reasonable doubt argument regarding the attempt on robbery, Your Honor. I guess I'd like to start back to the question about whether you need to verbally state that this is a robbery. No, but it's clear that in an attempt on robbery, the defendant must communicate, must affirmatively communicate a demand for property or attempt to take the property. So I don't have to verbally communicate that I'm going to steal the gavel if I take it and run without saying anything. Or I could point a gun and not say anything, and that's also communicating an armed robbery. The point is there has to be a communication. Now, it could be a combination verbally or action, but there has to be some, and there is none here. There is no other than this breaker's self, other than the breaker's self, this ambiguous slang term that Frankie Radcliffe heard. So there has to be either a demand or an action, and there is neither one here regarding the armed robbery conviction. And this armed robbery, obviously, you know, under Collins, we can find that, you know, the jury heard the evidence. But there has to be something in the record for this court to affirm that jury finding. It's, you know, they don't have clear, you know, there's a review here, and there is nothing there. I'm submitting to this court, even though there's bandanas and a gun, you know, there's nothing that there is an armed robbery underway, other than the breaker's self. So your honors will have to affirm this conviction on breaker's self. Because they're wearing bandanas, and it doesn't make any sense, and it could be there just to get their marijuana back. It could be to kill them, clearly. The state decided to charge the felony murder. Rather than a first degree murder, or whatever, you know, a physical assault in a shooting, or whatever it was, they chose to go with felony murder. And they chose as their underlying felony, the attempted robbery. And they got away with it in the trial court. And I'm submitting it was a wrongly decided jury verdict. I'll see you. Any other questions, your honors? Thank you, counsel. Thank you very much. The court will stand at recess, take this case under advisement for a panel change, and we will report out the decision with this case. Thank you.